MAX FEIGENBAUM ET AL. *v.* NEW BRITAIN HOUSING SITE DEVELOPMENT AGENCY

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 7, 1972—decided January 18, 1973

*Robert A. Scalise,* for the appellant (defendant).

*Allen J. Segal,* for the appellees (plaintiffs).

SHAPIRO, J. The defendant, in eminent domain proceedings, took property belonging to the plaintiffs in the city of New Britain for redevelopment purposes. See General Statutes, c. 130. Pursuant to § 8-129, the defendant filed a statement of compensation with the clerk of the Superior Court for Hartford County for the taking, determining the amount to be paid as $89,690. The property taken consisted of land and buildings and certain equipment used in the plaintiffs' scrap-metal business. The premises were located near the downtown section of New Britain in an A-2 residential zone and had been used for a scrap-metal yard since 1919. The use was nonconforming but a legal one because it had existed prior to the adoption of zoning in New Britain.

The referee, acting as a court, found the fair market value of two two-family houses thereon to be $20,250 and the fair market value of the remaining buildings and site improvements to be $34,900. The court further concluded that, based on comparable sales of land used for special purposes, the fair market value of the land was $71,400 and that the fair market value of the premises and improvements taken was $126,700.[1] The court also found that the parties had agreed and fixed the cost of removal at $40,500, making total damages suffered by the plaintiff of $167,200.[2] From a judgment rendered thereon the defendant appealed. The value placed on the two two-family houses, the remaining buildings, the site improvements and the cost of removal, however, is not in dispute. The appeal is limited to the value placed on the land.

The court found that the land was used for a special purpose and, in determining its fair market value on the date of taking, that factor was of significant importance. The sole issue which has been pressed in the defendant's brief and in argument is the claim that the court, in determining the value of the land condemned, erred in finding that it was being used for a special purpose and in using the selling price of gasoline station sites as comparable sales of land.

The court found the following pertinent facts: On March 9, 1970, the plaintiffs owned land and buildings on the west side of Willow Street in New Britain, which included two two-family houses facing the street with a one-story office attached to one of the houses. Next to the office was a garage and storage section and west of that a warehouse with a

---

[1] The correct addition should be $126,550.

[2] The correct amount should be $167,050.

loading dock. There was also located on the westerly side of the lot a so-called "shear shed," a building 10 x 10 feet in size. Enclosing the rear of the premises was 347 feet of fencing with a metal gate. The property also included a large truck scale with a platform that had a thirty-ton capacity. The property is located on a hard-surfaced street with sidewalks, curbs, sanitary sewers and water. All other utilities are immediately available. The scrap-metal business is not a dainty affair because the nature and variety of scrap metal involves a wide range of redeemable material in a multiplicity of sizes and weights. It is extremely difficult to relocate an operating scrap-metal business because of zoning requirements and, from the plaintiffs' standpoint, the location of this business on Willow Street was excellent in relation to its operation by the plaintiffs. Two substantial items which could not be moved and had to be completely replaced at the new location were the shears, which was an instrument designed for cutting very heavy and large pieces of metal and a concrete bed for the scales which had to accommodate loads of up to thirty tons. The highest and best use of the property taken would have been its continued use as a scrap-metal yard. A willing buyer and a willing seller of this property would have to pay and receive payment on the basis of the worth of the property as a scrap-metal yard.

The court further found that the land was used for a special purpose and in determining its fair market value on the date of the taking that factor was of significant importance. Two appraisals were offered by the plaintiffs, of which the higher figure was $89,021, computed at $3.75 per square foot. The other appraisal for the plaintiffs fixed the value at $78,642 or $3.30 per square foot. In assessing the

value of the land, the plaintiffs' appraisers considered its special use as based on sales of land in New Britain for gasoline station purposes. A witness for the defendant estimated the value of the land on the basis of its use for apartment houses at $34,200.

The court concluded that in determining just compensation for the land taken, the fact that it was being used for a lawful purpose which was a special purpose is a decisive factor in determining its fair market value on the day of the taking; that based on comparable sales of land used for special purposes, the fair market value of the land at the date of the taking was $3 per square foot or, in all, $71,400; that there was evidence of a purchase of land for junk-yard use at fifty-eight cents per square foot but this was not comparable to the land taken in size, location or typography and was in a remote part of the city.

The plaintiffs were entitled to receive just compensation for the land taken and the task of the court was to reach a result which would give the plaintiffs, as nearly as possible, a fair equivalent in money, after taking into account the opinions of the appraisers, the claims of the parties and all the circumstances bearing on value. *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43, 255 A.2d 836; *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693; see *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 384, 216 A.2d 426. The usual measure of damages is the fair market value of the property, in the determination of which it is proper to consider the use which is being made of the property if, in truth, that use of the property enhances its value. *Housing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169. It is

proper to consider "all those elements which an owner or prospective purchaser could reasonably urge as affecting the fair price of the land." *Andrews* v. *Cox*, 127 Conn. 455, 458, 17 A.2d 507. We have consistently applied the rule that the existence of a going business on the land is an element to be taken into account as indicating the highest economic use to which it may be put. *Seferi* v. *Ives*, 155 Conn. 580, 585, 236 A.2d 83, appeal dismissed, 391 U.S. 359, 88 S. Ct. 1665, 20 L. Ed. 2d 640.

"If, as the plaintiff claims, its junk business was safely ensconced in a desirable location and no other like location was available in the vicinity to which it might move, those factors were surely ones which both the owner and a prospective purchaser desirous of conducting a similar business on the property would consider in negotiating a sale price. Moreover, the referee was confronted with the question whether the highest and best use of this property actually was for the junk business then being conducted on it, as claimed by the plaintiff, or whether it lent itself as well or better for rental purposes as claimed by the defendant. . . . But the fact that the junk business was being conducted there could be considered in valuing the property if, in truth, it affected that value. *Seferi* v. *Ives*, . . . [155 Conn. 580, 583, 236 A.2d 83]." *Brothers, Inc.* v. *Ansonia Redevelopment Agency*, supra, 44. In the case before us, the court specifically found that the land in dispute was used for a special purpose and that this factor was of significant importance; that it was extremely difficult to relocate an operating scrap-metal business because of zoning requirements; that the location of this business was excellent in regard to the plaintiffs' operation; that the highest and best use of the property would be

its continued use as a scrap-metal yard; and that a willing buyer would pay and a willing seller would receive money on the basis of the property's worth as a scrap-metal yard.

In relation to the description of "special use" we have said that it serves "only as a means of expressing an effort to include, as a significant element of value, the private or special use or purpose which the property had for the owner." *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* supra, 42. If the owner has adopted a peculiar mode of using the land, by which he derives profit, and he is deprived of that use, justice requires that he be compensated for the loss to himself. It is the value which he has, and of which he is deprived, which must be made good by compensation. 4 Nichols, Eminent Domain (3d Ed.) § 12.32.

Both of the plaintiffs' appraisers used sales of land in New Britain for gasoline station purposes as indicative of a special use purpose on which to base their estimates of the value of the plaintiffs' land. There were no comparable sales of a junk or scrap-metal yard within the city of New Britain. Where the usual means of ascertaining market value are lacking, such as sales of like property, other means must, from the necessity of the case, be resorted to. 4 Nichols, loc. cit. "In condemnation cases, market value is usually established by sales of like property. It does not follow, however, that the owner is precluded from proving value when there have been no comparable sales. In such cases resort may be had to best available data which, even though speculative, under some circumstances may be sufficient to allow a jury to make an informed estimate of value. *United States* v. *Miller,* 317 U.S. 369, 63 S. Ct. 276, 87 L. Ed. 336, rehearing denied,

318 U.S. 798, 63 S. Ct. 557, 87 L. Ed. 1162; *United States* v. *Silver Queen Mining Co.,* 10 Cir., 285 F.2d 506; *Harwell* v. *United States,* 10 Cir., 316 F.2d 791." *United States* v. *Sowards,* 339 F.2d 401, 402 (10th Cir.); see also 29A C.J.S., Eminent Domain, § 136 (3); 27 Am. Jur. 2d, Eminent Domain, § 268. There is nothing in the record to show nor does the defendant claim that a gasoline station use of land is not a special use. Since the market value of like property such as scrap-metal yards was lacking, the court was warranted in considering the appraisers' valuation of gasoline station sites as special uses in order to enable it to reach its own valuation of the fair market value of the plaintiffs' land.

"[T]he trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraisers, the claims of the parties in the light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish value . . . . No single method of valuation was controlling, and the referee was entitled to select the most appropriate one under the facts as he found them." *Schnier* v. *Ives,* 162 Conn. 171, 177–78, 293 A.2d 1. From the facts found by the court it could reasonably conclude that the fair market value of the land was $71,400.

There is no error.

In this opinion the other judges concurred.