Condemnation of Premises 327-357 South Second Street, Reading, Pa. in the City of Reading, Berks County, Pa. by the Redevelopment Authority of the City of Reading for Urban Redevelopment Purposes. Graff Brothers Scrap Iron and Metal Works, a/k/a Graff Bros. Scrap Iron and Metal Company, Appellant.

Argued June 8, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Frederick G. McGavin*, for appellant.

*David A. Binder*, for appellee.

OPINION BY JUDGE WILKINSON, JR., July 25, 1979:

This appeal by Graff Brothers Scrap Iron and Metal Works (Condemnee) challenges a decision of the Berks County Court of Common Pleas granting a motion for a new trial filed by the Redevelopment Authority of the City of Reading (Authority). We reverse.

The condemned property, which is the subject of this appeal, consists of approximately 1.5 acres of land situated in the city's M-H, heavy industrial zoning district. Condemnee has conducted a scrap-metal processing business at the site since 1955.[1]

By its declaration of taking filed on April 14, 1971, the Authority condemned the subject premises. A court appointed board of view filed its report on July

---

[1] The business was originally etsablished at another location in 1916 by the Graff brothers' father.

10, 1973 awarding to Condemnee total damages of $80,500.[2] Condemnee appealed to the common pleas court and after four days of testimony the jury impaneled to hear the case awarded total damages of $140,500.[3]

The Authority filed a motion for new trial which, after argument, was granted by the common pleas court in an opinion and order dated June 21, 1978. It is from this order of the court below that Condemnee now seeks review.

The factual twist in this case arises by virtue of the Condemnee's status as a nonconforming use pursuant to a 1968 amendment to the City of Reading's zoning ordinance and the proper effect, if any, that fact could have on the determination of just compensation.[4]

A motion for a new trial is addressed to the discretion of the trial court and a decision on such a motion will not be disturbed on appeal except where a manifest abuse of discretion or a clear error of law is evident. *Department of Transportation v. McGuire*, 41 Pa. Commonwealth Ct. 14, 399 A.2d 134 (1979).

The trial court explained the decision on the motion in the following manner. "[T]he trial judge's inconsistent rulings on objections and his grant of [C]ondemnee's point for charge number 12 *may have misled the jury* as to the applicable law, condemnor's motion for a new trial is granted." (Emphasis added.)

---

[2] This award included $5,000 for business dislocation damages and $500 for professional fees.

[3] The jury included in its award $10,000 for business dislocation damages and $500 for professional fees.

[4] The pertinent portion of the 1968 amendment provides as follows: "It shall be unlawful to establish any junk yard or to enlarge any existing junk yard within the City limits."

Condemnee's point for charge number 12 which was assigned by the court as a factor potentially contributing to confusion of the jury reads,

12. If the jury finds as a fact that the value of the property has been enhanced or increased because of the use of said property and that such use could not be established in any other location within the marketplace, this may be considered by the jury in determining the fair market value of said tract.

The general test for ascertaining fair market value has long been recognized.

In estimating the market value of the land everything which gives it intrinsic value is a proper element for consideration. Land may be applied to various purposes and possess value for distinct objects. . . . It is general market value for any purpose that will induce persons to purchase, which is the true test.

*Shenango and Allegheny Railroad Co. v. Braham,* 79 Pa. 447, 453 (1875).

It is Condemnee's theory in this case that the zoning scheme in effect in the City of Reading at the time of condemnation served to enhance the value of its property. The prohibition on the establishment of a similar business in the city created a valuable uniqueness in Condemnee's tract.

The words of the Connecticut Supreme Court are especially pertinent in this context:

'If, as the [Condemnee] claims, its junk business was safely ensconced in a desirable location and no other like location was available in the vicinity to which it might move, those factors were surely ones which both the owner and a prospective purchaser desirous of conducting a similar business on the property would con-

sider in negotiating a sale price. . . .' (Citation omitted.)

*Feigenbaum v. New Britain Housing Site Development Agency,* 164 Conn. 254, 259, 320 A.2d 824, 827 (1973).

Mr. Seymore Graff, secretary-treasurer and general manager of Condemnee, testified to the localized character of the business.

> Our market area was strictly local. . . . We had also relied on more or less repeated business because we don't do advertising of any kind and there was nothing more than customers' word to mouth . . . but as far as trying to go out of the area or something, we never made no attempt to, to buy merchandise or look to expand the business to have others brought in because we do not make a practice of going for anything ourselves.

When specifically questioned about the geographical makeup of Condemnee's clientele Mr. Graff responded that "it was over 90% local, that would be from the city residents."

Ample evidence was adduced to show that the business could not be relocated at any suitable site within the pertinent market area. The 1968 zoning amendment alone precluded its relocation within the city from which Condemnee derived 90% of its business.[5]

---

[5] Some discussion was had before this Court on the possible significance of a distinction between Condemnee's market area and the zoning area consisting of the City of Reading. Whether Condemnee's market area was coterminous with the city limits is not, in the present context, determinative. The significance of the zoning prohibition lay in the effect it might have on the fair market value of Condemnee's unique property because the business could not be duplicated elsewhere in the city from which it drew the bulk of its business. The influence which such a situation might have on a willing purchaser was for the jury to decide.

The evidence presented in this case nearly parallels the items found to be significant by the Connecticut court in *Feigenbaum, supra.*

> In the case before us, the court specifically found that the land in dispute was used for a special purpose and that this factor was of significant importance; that it was extremely difficult to relocate an operating scrap-metal business because of zoning requirements; that the location of this business was excellent in regard to the plaintiffs' operation; that the highest and best use of the property would be its continued use as a scrap-metal yard; and that a willing buyer would pay and a willing seller would receive money on the basis of the property's worth as a scrap-metal yard.

*Id.* at 259-60, 320 A.2d at 827.

In light of the foregoing we are satisfied that Condemnee's point for charge no. 12 accurately stated the applicable law in the context of the testimony developed at trial and could not validly support the granting of a new trial.

Two apparently contradictory evidential rulings in the trial of this case are also offered to explain the award of a new trial. During direct examination regarding his efforts to relocate the business, Mr. Graff concluded, "Being that there was no place to relocate in the market area, it just brought the business to destruction." On motion of the Authority, the testimony was stricken and the jury cautioned to disregard it. However, this same witness on cross-examination, included as a factor used in valuing the property "[t]he destruction of the business." This motion to strike was overruled.

It is well established that the value of the business per se being conducted on condemned property is not

itself an appropriate constituent of fair marke value. "Commonwealth does not condemn an owner's business acumen or its results expressed in value. It condemns his property, which one man may use exceeding well, another ill, and a third not at all." *Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 409, 158 A.2d 541, 543 (1960). The property's current use, as opposed to its value as such, is of course a proper element in ascertaining fair market value. Section 603 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-603.

We have carefully examined the record and find no basis for the trial judge's concern over possible confusion of the jury. There was no evidence before the jury from which it could have improperly placed a value on the Graff scrap-metal business. "The trial court correctly instructed the jury on the essential elements to be considered in reaching its verdict, and the verdict was in accordance with these instructions." *Snyder v. Commonwealth,* 412 Pa. 15, 24, 192 A.2d 650, 654 (1963).[6]

Justice POMEROY outlined the important factors for our consideration when the grant of a motion for a new trial is being reviewed.

> Established doctrine in Pennsylvania dictates that a trial judge abuses his discretion when he grants a new trial merely because he would have arrived at a different conclusion on the facts of the case than that reached by the jury. . . . Where, however, the trial court is convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice, he is under

---

[6] In this case, disregarding the extremely high figure offered by Mr. Graff, the jury's award was precisely midway between the remaining high and low figures provided by the expert witnesses.

a duty to grant a new trial. . . . [A] new trial should be granted and will be upheld where the jury verdict is so opposed to the facts that the judicial conscience cannot let the result stand. (Citations omitted.)

*Austin v. Ridge,* 435 Pa. 1, 5-6, 255 A.2d 123, 125 (1969).

At no point in the opinion of the common pleas court are such serious misgivings expressed. The court's concern that its rulings "may have misled the jury" is not sufficient under these facts to support a motion for new trial. "[T]he granting of a new trial by the court below based on some vague notion of general jury confusion was an abuse of discretion." *Beyrand v. Kelly,* 434 Pa. 326, 329, 253 A.2d 269, 270 (1969).

As Judge BLATT recently stated, "Having carefully reviewed the evidence in the record, . . . we believe that the trial court abused its discretion in granting a new trial for the reasons given." (Citation omitted.) *Redevelopment Authority of the City of Philadelphia v. General Mills, Inc.,* 44 Pa. Commonwealth Ct. 391, 395, 404 A.2d 710, 712 (1979).

Accordingly, we will enter the following

ORDER

AND Now, July 25, 1979, the order of the Court of Common Pleas of Berks County, Civil Action—Law, at No. 62 May Term 1971, dated June 21, 1978, is hereby reversed and the record is remanded to that court for reinstatement of the jury's verdict and entry of judgment thereon.