STATE of Minnesota, Petitioner,
Appellant,

v.

HARBOR CITY OIL COMPANY,
et al., Respondents.

No. CX–91–1619.

Court of Appeals of Minnesota.

June 16, 1992.

Review Denied Aug. 11, 1992.

Hubert H. Humphrey, III, Atty. Gen., Sherry A. Enzler, Special Asst. Atty. Gen., Donald J. Mueting, Asst. Atty. Gen., St. Paul, for appellant.

Michael E. Orman, Charles C. Kallemeyn, Orman & Nord, Duluth, for respondents.

Considered and decided by LANSING, P.J., and NORTON and DAVIES, JJ.

## OPINION

LANSING, Judge.

The state challenges the admissibility of evidence that the nonconforming use status of a condemned property increased its fair market value. We affirm.

## FACTS

The State of Minnesota condemned the property on which Harbor City Oil operated a bulk heating oil storage and distribution center. Situated on the property were a number of above ground oil storage tanks that were a legal but nonconforming use under the existing zoning ordinance. Because of the current zoning regulations, Harbor City was unable to find another site of operation within East Duluth, but eventually relocated in West Duluth approximately five miles from the condemned property.

At a jury trial to determine the market value of the property, over the state's objections the court allowed Harbor City's expert witness to testify that the nonconforming use status of the property has a specific value that should be factored into the compensation award. Basing his valuation estimate on the cost savings benefit of operating the business on the nonconforming property, the expert testified that this "added value" is $262,000, and the total value of the property is $360,000. The court also denied the state's request that it instruct the jury to disregard evidence of added value. The jury awarded Harbor City $210,000 for the added value of the nonconforming use status and a total award of $310,500.

## ISSUE

Did the trial court err in allowing the jury to hear and consider testimony that the nonconforming use status of a condemned property increased its fair market value?

## ANALYSIS

In determining the fair market value of property in a condemnation proceeding, any evidence that legitimately bears on market value is admissible. *State v. Red Wing Laundry & Dry Cleaning Co.*, 253 Minn. 570, 572, 93 N.W.2d 206, 208 (1958) (quoting *King v. Minneapolis Union Ry. Co.*, 32 Minn. 224, 226, 20 N.W. 135, 136 (1884)). The highest and best use for which the property is adapted and available under applicable zoning regulations is an essential component of market value. *City of St. Paul v. Rein Recreation, Inc.*, 298 N.W.2d 46, 49 (Minn.1980); *see also* John C. Schneider, *The Admissibility of Zoning Ordinances as Evidence of Fair Market Value in Eminent Domain Proceedings*, 12 Syracuse L.Rev. 352 (1961).

Minnesota courts have traditionally used three methods to determine the fair market value of property in condemnation proceedings: (1) the market data approach; (2) the income-capitalization approach; and (3) the reproduction cost approach. *County of Ramsey v. Miller*, 316 N.W.2d 917, 919 (Minn.1982). These techniques are neither conclusive nor exclusive but are factors to consider in arriving at the fair value. *Red Wing Laundry*, 253 Minn. at 574, 93 N.W.2d at 209; 4 Julius L. Sackman & Patrick J. Rohan, Nichols' The Law of Eminent Domain § 12C.01[3] (3rd ed. 1990). Courts have accepted other valuation approaches when supported by competent and reliable expert testimony. *See, e.g., Miller,* 316 N.W.2d 917.

The supreme court has permitted a wider latitude of admissibility when zoning issues significantly affect the value of the property. In *Rein Recreation* the court allowed evidence of the owner's prezoning development plans for a luxury high-rise, although evidence of an owner's particular

plans and intentions normally is too speculative to be admissible. *Rein Recreation*, 298 N.W.2d at 50–51. Under the newly applicable zoning ordinance, the high-rise project was restricted to only the owner's existing plan. *Id.* at 50. In valuing the property, the jury was allowed to consider evidence that a willing buyer would also be able to construct the high-rise, concededly the highest and best use of the property. *Id.* at 51.

Other jurisdictions have allowed evidence that a nonconforming use had a bearing on the fair market value of the property. *See Gebrian v. Bristol Redevelopment Agency*, 171 Conn. 565, 370 A.2d 1055 (1976) (junk yard); *City of Elko v. Zillich*, 100 Nev. 366, 683 P.2d 5 (1984) (auto wrecking business); *In re Condemnation of Premises 327–357 S. Second St.*, 44 Pa.Commw. 429, 404 A.2d 722 (1979) (scrap metal business). Each case relies on the general rule that all factors bearing on market value may be considered in a condemnation proceeding.

■ We agree that the nonconforming use value of the property, or added value, is a legitimate consideration in arriving at the fair market value of the property. A willing buyer intending to put the property to its highest and best use as a bulk oil storage facility would consider the zoning status in determining a fair price. The zoning benefits are relevant because the property has a benefit that it would not have if its land use regulation status were different. *See Rein Recreation*, 298 N.W.2d 46. The trial court did not err in allowing testimony on added value.

■ The state contends that avoided costs, Harbor City's basis for the calculation of the value of the nonconforming use, are nothing more than going concern and efficiency value which cannot be compensated in an eminent domain proceeding except under limited circumstances. *See City of Minneapolis v. Schutt*, 256 N.W.2d 260, 261–62 (Minn.1977). Going concern and efficiency value are noncompensable in a condemnation because they relate only to the business operating on the condemned property. However, the zoning benefit of Harbor City's nonconforming use is an element of market value related to the property.

In establishing the market value for Harbor City's property, comparison sales were not available, and a traditional cost approach was not appropriate. Under these circumstances, it was within the trial court's discretion to admit testimony of avoided costs as a substitute for market data. The avoided cost computation augmented the sales comparisons and tied the added value to concrete factors which reduced its speculative nature.

## DECISION

The trial court did not abuse its discretion in allowing the jury to hear and consider expert testimony that the nonconforming use status of a condemned property increased its market value.

Affirmed.