SOUTH FARMS ASSOCIATES LIMITED PARTNERSHIP
*v.* J. WILLIAM BURNS, COMMISSIONER
OF TRANSPORTATION
(12078)

FOTI, LAVERY and FREEDMAN, Js.

Argued March 29—decision released July 5, 1994

*William H. Champlin III,* with whom, on the brief, was *Kristine D. Ragaglia,* for the appellant (substitute plaintiff).

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, *Kenneth N. Tedford,* and *Lawrence T. Widem,* assistant attorneys general, for the appellee (defendant).

FOTI, J. This is an appeal by the substitute plaintiff, Martin W. Hoffman (hereinafter plaintiff), the trustee in bankruptcy for the plaintiff, South Farms Associates Limited Partnership (South Farms), brought pursuant to General Statutes § 51-197a from the assessment of damages for the total taking of its property by eminent domain pursuant to General Statutes §§ 13a-73 (b) and 13b-23. The defendant, the commissioner of transportation, determined the value for the purpose of the taking to be $433,500. South Farms made timely application to the Superior Court, pursuant to General Stat-

utes § 13a-76, for a reassessment of damages. There-after, the court, pursuant to General Statutes § 52-434a (b), referred the condemnation appeal to a panel of three state trial referees. The trial referees agreed that the defendant had undervalued the property taken and awarded the plaintiff an amount of $1,233,000 in com-pensation,[1] plus interest and an appraisal fee.

The plaintiff claims that the trial referees improp-erly valued the property by failing to consider the effect on market value of the most advantageous and proba-ble use of the property and in assessing the property at a value for the general use of commercial develop-ment. The plaintiff argues that after the trial referees found that there was a reasonable probability that the zone change and wetland permits necessary for com-mercial development would be obtained, it should have valued the property for the specific use demonstrated by the evidence to be the highest and best use of the property—the proposed development of a suite hotel and two office buildings. We affirm the judgment of the trial referees.

The trial referees' memorandum of decision and the record reveal the following facts. South Farms pur-chased the subject property on August 5, 1988, for $380,000. The property is an irregularly shaped par-cel of vacant land situated in the town of Newington consisting of open and wooded sections with low roll-ing topography. The property spans approximately 29.9 acres, approximately twenty acres of which is classi-fied as wetlands and the remainder is uplands. The property was taken together with all appurtenances including an easement approximately fifty-one feet wide to pass and repass over the lands of Ginsburg Properties Group, Inc., and McDonald's Corporation.

---

[1] Judgment entered in the amount of $1,233,000, less the $433,500 previ-ously paid, for a net amount of $799,500.

This easement is located in the towns of Newington, New Britain and Farmington and provides access to Route 71.

The subject property is located in a class B business zone.[2] Permitted uses include retail stores, banks, personal and business services, business and professional offices, and the like. Special exceptions include restaurants, theaters and similar places of entertainment, motor vehicle sales and service, and other specified uses. The maximum building height allowed is thirty-five feet, two stories. The land to the west and fronting on the east side of Route 71 is zoned commercial development (CD).

The plaintiff's site development plan proposed for the site a mixed use project, Quadrangle Corporate Center. The proposal included a five-story hotel and conference center containing 231,653 square feet with 262 suites, and two multistory office buildings, each with approximately 160,000 square feet. Parking for the project was to be provided in a two level garage the top level of which would serve as a deck on which the three buildings were to be located. On February 22, 1989, Radisson Hotel Corporation conditionally committed itself to a possible franchise operation of the suite hotel, stating: "Once all city approvals are in place

---

[2] The property is part of a distinct commercial district in Newington the zoning classification of which has been changed frequently over the years as the surrounding area developed. In the early 1950s, the portion of Route 71 frontage in Newington was given a business B classification. This was changed in 1964 to special development district and the zoned area increased from seven to forty-five acres. Uses were restricted primarily to hotels, convention centers and business offices. In 1984, the designation was amended to commercial development. This change also instituted more restrictive land use and new provisions for site plan review. In January, 1986, the zone of a small portion of the land fronting on the highway was downgraded to business B to permit a small shopping center. At the same time, the zoning commission also reclassified the rear land as business B, including the subject property.

and financing is imminent, we should move to get the application submitted to our franchise committee for their approval."

The development was to be constructed on the highland area located on the southern portion of the subject property, occupying approximately 9.2 of the total 29.9 acres. It was estimated that the hotel would occupy approximately 3.86 acres, 42 percent, and the office development 5.34 acres, 58 percent. According to the proposed plans, the project was located entirely outside the wetlands area, except for an access bridge connecting the complex to Route 71 via the easement over the land of McDonald's Corporation.

On November 9, 1988, the plaintiff applied to the Newington town plan and zoning commission for reclassification of the subject property to CD zone. On the date of the scheduled hearing, the application was withdrawn because the required site development plan did not accompany the application. A neighboring landowner, however, completed an application and received such a zone change, from B to CD, for the adjoining land.

In June, 1989, the plaintiff, through one of its general partners, received the first indication of the defendant's interest in the condemnation of the property from the Army Corps of Engineers in connection with the central Connecticut expressway project. Thereafter, it received an official notice of intent to condemn, which was followed by two state appraisals and the commencement of eminent domain proceedings. The taking map is dated July, 1989. Having been given this notice of intended condemnation, the plaintiff ceased further development activity. Bankruptcy followed.

The trial referees heard seventeen days of testimony and viewed the subject property in the presence of trial counsel. Four appraisers testified, two for the plain-

tiff and two for the defendant.[3] All agreed, and the trial referees concurred, that the sales comparison approach was the best valuation method. They did not agree, however, on the highest and best use or fair market value of the property at the time of the taking.

The defendant's first appraiser, a department of transportation employee, stated that in his opinion the subject property was "nonbuildable" and that its highest and best use was as open space. He set damages for the taking at $433,500. The defendant's second appraiser, a private appraiser, calculated damages at $600,000 and indicated that development might be an alternative use, subject to obtaining the proper permits. The plaintiff's two appraisers estimated damages at $5,250,000 and $6,600,000, respectively, and were of the opinion that the highest and best use of the property was as a quality hotel and two office buildings of the size proposed by the plaintiff.

The crucial issue in this matter, as the plaintiff argues, is whether the trial referees correctly stated the law, when they stated in the memorandum of decision: "The true issue is, not the value of the property for the specific use which would be permitted if a zone change was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change. *Greene* v. *Burns,* [221 Conn. 736, 745, 607 A.2d 402 (1992)]." The plaintiff agrees with the second portion of that statement, but asserts

[3] In fact, five appraisers testified in this matter although the fifth, Russell Hunter, was not noted in the trial referees' memorandum of decision. Hunter testified briefly that he had conducted two appraisals of the subject property, on October 23, 1987, and on July 1, 1988, both yielding $275,000 as the estimated value of the property. His opinion of the highest and best use of the property at that time was for general commercial use. On cross-examination, Hunter admitted that he was not surprised that the property had sold for 30 percent more than his estimate in August, 1988, less than two months later, and that he had no opinion as to the value of the property at the time of the taking in September, 1989.

that the law requires the court to consider the value of the property under the development plan proposing the highest and best use. The plaintiff contends that the trial referees rejected the defendant's argument that value should be based on open space use, accepted and credited the evidence concerning zone change and permits, and heard evidence of the highest and best use of the property for a *specific* development plan, the hotel and office complex. The plaintiff contends that no general use was defined by the evidence. Accordingly, the plaintiff argues that by failing to value the land in accordance with the specific development plan, the trial referees reached "a speculative and unsupported valuation" for the property for an unknown and general commercial development use. The plaintiff asserts that, because the trial referees did not consider the highest and best use, a remand is required with direction to apply the proper standard of valuation. We do not agree.

The plaintiff is entitled to be paid just compensation, as the owner of land taken by condemnation. *Leverty & Hurley Co.* v. *Commissioner of Transportation,* 192 Conn. 377, 380, 471 A.2d 958 (1984). "The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking." *Greene* v. *Burns,* supra, 221 Conn. 745. The probability of a zone change that could affect the price may properly be considered in the determination of the fair market value. *Transportation Plaza Associates* v. *Powers,* 203 Conn. 364, 375, 525 A.2d 68 (1987). "[T]he true issue is, not the value of the property for the use which would be permitted if a change in zone was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change. *Budney* v. *Ives,* [156 Conn. 83, 89, 239 A.2d 482 (1968)]." *Greene* v. *Burns,* supra, 745. The trial referees' statement

of the law, identical to that cited except for the addition of the word "specific" to describe the use, is a correct and accurate statement of the law, as set forth in *Budney* v. *Ives,* supra, 89, and recently employed by our Supreme Court in *Greene* v. *Burns,* supra, 745.

The concept of highest and best use, chiefly employed by appraisers as a starting point in estimating the value of real estate, concerns the use that will most likely produce the highest market value, greatest financial return, or the most profit from use of that property. *Robinson* v. *Westport,* 222 Conn. 402, 405–406, 610 A.2d 611 (1992). "The questions of the highest and best use of property and of the reasonable probability of a zone change are . . . questions of fact for the trier. . . . We will not disturb the court's findings on those issues unless they are clearly erroneous." (Citations omitted.) *Greene* v. *Burns,* supra, 221 Conn. 748.

It is clear from our review of the record that the trial referees considered all of the evidence and determined that the highest and best use was commercial development. In a thorough and well reasoned memorandum of decision, the panel decided the optimum use of the property by considering which use was physically possible, legally permissible, financially feasible and maximally productive. See 7 P. Nichols, Eminent Domain (3d Ed. Rev. 1994) § 4.04 (4). The referees specifically referred to the "economic feasibility of the proposed project" and found "that except for the taking, it was reasonably probable that the zone of the subject property would have been reclassified from business B to commercial development, and further that the highest and best use of the property was for commercial development as permitted by this zone classification." The trial referees also found that it was "reasonably probable that local, state and federal wetlands permits would issue, at least conditionally, for the development of the uplands portion of the subject site." There was

sufficient evidence presented to support the factual determinations of the trial referees. The trial referees' finding that the highest and best use of the property was commercial development was not clearly erroneous.

In determination of the fair market value, the trial court in a condemnation appeal hears the matter de novo; *DeLucia* v. *Burns,* 11 Conn. App. 439, 443, 527 A.2d 1234, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987); and makes an independent determination of value and fair compensation in light of all the circumstances, the evidence, the trial court's general knowledge and the court's viewing of the premises. *Minicucci* v. *Commissioner of Transportation,* 211 Conn. 382, 388, 559 A.2d 216 (1989). The trial court may accept opinions of witnesses as to valuation, but it is not bound to do so as a matter of law; *Birnbaum* v. *Ives,* 163 Conn. 12, 21–22, 301 A.2d 262 (1972); an award in such a matter need not be within the parameters as set by testimony of experts. *Bowen* v. *Ives,* 171 Conn. 231, 239, 368 A.2d 82 (1976). The trial court has the right to accept as much of the testimony of the experts and the recognized appraisal methods employed by them as it finds applicable. *Carol Management Corp.* v. *Board of Tax Review,* 228 Conn. 23, 36, 633 A.2d 1368 (1993). The general knowledge of the trial referees, their viewing of the property and the evidence presented properly contributed to their determination of the fair market value of the property. The referees were free to consider comparable sales of land and to determine independently the fair market value. *Robinson* v. *Westport,* supra, 222 Conn. 410.

The trial referees' memorandum of decision sufficiently articulated the basis for the award. Evidence of special development costs was factored into the economic feasibility of the proposed project; the trial referees determined that the highest and best use of

the property was commercial development as permitted by the zone reclassification. The trial referees were not required to specify what that commercial development might include, or further define commercial development.

While the trial referees did not specify the valuation method used or specific factors considered in determining the fair market value, they did state that "the sales comparison approach is the best valuation methodology in this instance," endorsing the method used by all of the appraisers. Since no one method of valuation is controlling in the trier's determination of just compensation; *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 37–38, 428 A.2d 789 (1980); the trial court need not necessarily specify a valuation method used. Nor is the court required to set forth specific factors that were considered in arriving at that determination. The trial court's decision is reviewable only if it is apparent that it misapplied, overlooked, or gave a wrong or improper effect to any test or consideration that it was that court's duty to regard. *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977).

"[T]he trial referee[s] viewed the premises, heard all the evidence presented by the parties, studied the appraisal reports and made [their] own independent determination of value. 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous.' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980)." *Minicucci* v. *Commissioner of Transportation,* supra, 211 Conn. 388. The trial referees' valuation of the property was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.