[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
MEMORANDUM OF DECISION
The plaintiff, Sam Friedman, appeals pursuant to General Statutes § 13a-76 from an assessment of damages by the commissioner of transportation of the state of Connecticut following the taking of his land in Ellington, Connecticut.
On June 22, 1995, the commissioner filed a notice of condemnation and assessment of damages pursuant to General Statutes § 13a-73(b) for the layout, alteration, extension, widening and change of grade to a highway known as Connecticut Route 140 located in the town of Ellington. The premises taken CT Page 3402 by the state consists of two residential building lots known as 105 and 133 Sadds Mill Road totalling 43,102 square feet of land. The damages assessed and paid to the plaintiff by the state for taking of the two lots was $47,300. The plaintiff claims that the assessment of damages was inadequate.
At the trial, the plaintiff presented the expert testimony of his appraiser, Thomas W. Henry. The state presented the expert opinion of its appraiser, Brian C. Marchi. The court viewed the property on January 16, 1998.
"The function of the court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken." Alemany v. Commissioner of Transportation,215 Conn. 437, 444, 576 A.2d 503 (1990). "The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. Greene v. Burns, 221 Conn. 736, 745,607 A.2d 402 (1992). In determining the fair market value, the court hears the matter de novo and makes an independent determination of value and fair compensation in light of all the circumstances, the evidence, the court's general knowledge and viewing of the premises. South Farms Associates Limited Partnership v. Burns,35 Conn. App. 9, 17, 644 A.2d 940, cert. denied, 231 Conn. 912,648 A.2d 157 (1994). The court may accept the opinions of witnesses as to value, but it is not bound to do so as a matter of law. Id. An award in such a matter need not be within the parameters as set by testimony of experts. Id.
Before the taking, the two parcels of land were described as follows:
 Parcel 1 BEFORE, 105 Sadds Mill Road is a 1.45 acre parcel of land fronted on its southern boundary by Sadds Mill Road CT RT 140 with approximately 895 feet of frontage. The parcel is approximately 160 feet at its deepest on the western boundary and 90 feet at the narrowest point at the eastern boundary. It is primarily wooded and rises steeply from an elevation of 20 to 250 feet. Soils are predominantly Terrace Escarpment. This parcel has residential potential for one dwelling site.
 Parcel 2 BEFORE, 133 Sadds Mill Road is a 1.02 acre parcel of land fronted on its southern boundary by Sadds CT Page 3403 Mill Road CT RT 140 with approximately 350 feet of frontage. The parcel is approximately 289 feet deep. It is primarily wooded and rises gently from the road from an elevation of 200 to 250 feet. Soils are predominantly Enfield Silt Loam 3 to 8% slopes. This parcel shares its eastern boundary with Parcel 1. This parcel has the potential for one dwelling site.
(Plaintiff's Exhibit A, p. 25.)
After the taking, the two parcels of land were described as follows:
 Parcel 1 is a 1.21 acre parcel that is approximately 60 feet wide and 900 feet long all on a severe slope. Parcel 2 is (5,040 SF) 0.12 acres that is approximately 60 feet wide and 84 feet long. It has a severe slope to the highway and the rear slopes down severely to meet the adjoining parcel. Both parcels have a full perpetual easement to slope for the safety of the highway. Neither parcel has economic value as no structure can be built on either. These parcels do not provide any advantage to their respective abutters because of access as well as the perpetual easement. The highway is just south, so there is no need for buffer to other property owners and the land is so configured that not even passive recreational opportunities exist.
(Plaintiff's Exhibit A, p. 50.) From the site plan provided in the plaintiff's appraisal report, we have pictorially shown the portion of the two parcels taken by the state:
 Legend: Solid lines — property lines before taking Hatch lines — areas of parcel 1 and 2 taken by state Cross hatch lines — areas of parcel 1 and 2 taken for slope and gravel rights.
(See Plaintiff's Exhibit A, pp. 26, 31.)
Both appraisers determined that parcel two had the highest and best use as a residential lot. We agree. We also agree with both appraisers that parcel two was completely destroyed by the taking. Prior to the taking, parcel two was a building lot of CT Page 3404 record. Parcel two was residentially zoned land previously improved with a residential dwelling, which no longer exists. Approximately 0.32 acre remains after the taking from the original 1.02 acres of land. The state also acquired easement rights and the right to remove, use or retain excavated material from the easement area on parcel two. The plaintiff does not dispute the state's assessment of damages for the taking of lot two. We agree with the state's determination that the full value of lot two prior to the taking was $46,000.
Parcel one is a 1.45 acre parcel of land, which is essentially a 900 foot strip of land along Sadds Mill Road with a depth of 90 feet on the easterly end to 160 feet on the westerly boundary. This lot has also been recorded by the town assessor as a residential building lot. After the taking, parcel one consisted of 1.21 acres of land. While the state's appraiser, Marchi, testified that parcel one was not a buildable lot, we find the evidence presented by the plaintiff credible that parcel one, although a difficult lot to develop, did have the highest and best use as a single family residential lot. We concur with Henry, the plaintiff's appraiser, that parcel one had such limitations, because of its configuration, that it should be valued below the lowest sale in his range of comparable sales. Henry valued parcel one $10,000 lower than the poorest quality comparable sale to arrive at a value of $25,000. Marchi was of the opinion that parcel one after the taking was basically the same in size and shape as prior to the taking and that there was no evidence of damage to the remainder of the land. On the contrary, the defendant took a significant portion of an already limited use lot and cut the depth from 160 feet to 60 feet. In addition, the defendant encumbered the remaining 60 foot strip of land with an easement and a right to excavate and remove gravel and soil from the site. As happened to parcel two, parcel one was also effectively destroyed for any practical use except to be incorporated into the plaintiff's abutting land.
Henry found that the remaining subject land had a minimal value of $500 for each parcel, at the low end of limited use property values, because he considered the land to be of no use to the abutter. We agree with Henry when he concluded,
 Because of the extreme limitation to these parcels a nominal value of $500 has been estimated for each parcel. This value is at the low end of limited use property values because there is really no advantage to CT Page 3405 the abutter to own them. There is a disadvantage and that is the obligation to pay taxes on land that does not provide any benefit to its owner.
 Based on this determination, the market value of the subject property with the taking for highway Rt 140 from 105 and 133 Sadds Mill Road, CT Rt 140, Ellington, Connecticut, as of June 22, 1995, is $1,000.
(Plaintiff's Exhibit A, p. 50.)
We conclude that the value of the plaintiff's property prior to the taking was $46,000 for parcel two and $25,000 for parcel one for a total of $71,000. Subtracting $1,000 for the value of the plaintiff's land after the taking as determined by Henry, results in a total compensation of $70,000.
The final claim of the plaintiff is that he is entitled to damages for the removal of gravel from the subject property by the state. The state removed 5400 cubic yards of gravel in the roadbed and slopes taken by the state. Marchi noted that the subject properties were adjacent to property which had a sand and gravel operation on it. Marchi also noted that excavation operations require a special permit and must meet specific criteria with regard to property lines and slope lines that the subject properties would find impossible to meet. (See Defendant's Exhibit 2, p. 2.)
"Although market value of the taken property is ordinarily the most appropriate measure of fair compensation; we have long held that other measures may be appropriate when the fair market value measure of damages does not fully compensate the owner . . . [T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one." (Citations omitted.) Alemany v. Commissioner of Transportation,supra, 215 Conn. 437, 444. In this regard, we must determine if the plaintiff is entitled to be paid for the 5400 cubic yards of gravel taken by the state. We have previously determined that the highest and best use of the subject parcels was for residential use, not as a commercial gravel bank. The plaintiff did not use the subject parcels as a gravel bank operation. The gravel removed by the state was part of the land that the state had already taken and for which the plaintiff was compensated.
Where a condemnation proceeding results in a partial taking CT Page 3406 of an owner's land, the measure of damages is usually the difference between the market value of the whole tract of land with its improvements before the taking and the market value of what remained thereafter. Laurel, Inc. v. Commissioner ofTransportation, 180 Conn. 11, 36, 428 A.2d 789 (1980). Since we basically conclude that the plaintiff is entitled to the market value of the whole tract of land before the taking minus the minimal sum of $1,000, the plaintiff has been fully compensated for any claim of damage as a result of gravel removal.
Accordingly, judgment may enter in favor of the plaintiff for $70,000 less $47,300 previously awarded to the plaintiff, or $22,700, plus costs and interest from the date of taking.
ARONSON, J.