[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, 595 Corporate Circle and Stop Shop Supermarket Company (hereinafter "Corporate Circle") appeal from the assessment of damages claiming that the amount of compensation in the sum of $156,000 deposited with the Court by the Commissioner of Transportation ("Commissioner") is inadequate.
The condemned property consists of 21,755 square feet of land area ("Parcel A") located at 1-9 Leetes Road and "Parcel B" at the intersection of Leetes Island Road and East Main Street. The appraised value in the amount of $3,700 as damages for Parcel B is not disputed. Accordingly the Court finds that the assessment for damages for Parcel B is just and reasonable. The dispute lies in the fair market value of Parcel A consisting of 21,755 square feet. The appraiser, Estrada, for Corporate Circle opines that a value of $10.00 per square foot is the fair market value (FMV) and the appraiser, Peter Kilbride, for the Commissioner opines the value of $7.00 per square foot is the FMV.
"Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statues and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. . . . Thus there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that . . . agreed on between the condemnee and the taking authority." (Internal quotation marks omitted.) Mincucci v.Commissioner of Transportation, 211 Conn. 382, 388 (1989).
The starting point when determining FMV of property is to first determine the highest and best use of the property. CT Page 13004
The concept of highest and best use, chiefly employed by appraisers as a starting point in estimating the value of real estate, concerns the use that will most likely produce the highest market value, greatest financial return, or the most profit for use of that property, [citation omitted]. The questions of highest and best use of the property and of the reasonable probability of a zone change are . . . Questions of fact of the trier . . . [quotation marks and citation omitted].
South Farms Associates Ltd. Partnership v. Burns, 35 Conn. App. 9, 16,644 A.2d 940 (1994), Cert. Den., 231 Conn. 912, 648 A.2d 157 (1994).
Corporate Circle argues that "In determining [a property's] highest and best use, the trial referee must consider whether there was a reasonable probability that in the reasonably near future the subject property would be put to that use and the effect, if any, that such a prospective use may have on market value at the time of the taking. Towpath, 255 Conn. 540; see also ATC, 256 Conn. at 829. Corporate Circle has never made application for a variance or special exception.
[T]he use to which land can be put with reasonable probability is part of the standard scenario of hypothetical negotiations between a willing buyer and seller and is therefore an appropriate consideration in determining the fair market value of taken property. Towpath,255 Conn. at 544. (See pgs. 11 and 12 of Plaintiffs' Post-Hearing Brief).
As of July 27, 2000, the date of condemnation hereunder, Stop Shop Supermarket Company ("Stop Shop") was the lessee of both parcels A and B who joined in as appellants herein.
Both appraisers in the present case agree that the highest and best us for Parcel A is for commercial use. Kilbride opined that the use for the development rights from Parcel A to maximize the development of Parcel B would be the highest and best use of both parcels. That the maximum development of Parcel B would be the key to the highest and best use of Parcels A and B. Estrada opined that the highest and best use for this "tag along" parcel A is to acquire all of the governmental approvals and variances to build a commercial building. Kilbride essentially disagreed and that a prudent developer would use the development rights from the tag along Parcel A to expand the permitted building on the 16 acre parcel B. This court concludes from all the evidence that the highest and best use of the property is to maximize the use of Parcel A with the use of Parcel B and that a prudent developer would use both pieces rather than an attempt to use Parcel A alone. To use Parcel A alone would require special permits that Estrada opines would likely be obtained because Parcel A is in a special development area. However, the Court concludes from all the evidence that to obtain all the permits and variances is CT Page 13005 speculative at best.
"[T]he true issue is, not the value of the property for the use which would be permitted if a change in zone was made, but the value of the property as zoned at the time of the taking as it is affected by the probability of a change." Budney v. Ives, 156 Conn. 83, 89 (1968), citingState v. Gorga, 26 N.J. 113, 117, 138 A.2d 833 ( ).
Shirley Rasmussen, who has served as the Town Planner for 15 years testified that the present zoning envelope on Parcel A would limit development on the land to an area of 800 square feet. Further she could not tell if a variance, special exception or site plan approval would be granted. The court finds that it is less probable and costly for a developer to attempt to obtain the necessary permits than to have Parcel A as a tag along to maximize Parcel B.
Corporate Circle opposed an upgraded appraisal of Kilbride. However the Commissioner argues that Corporate Circle had a copy of the pre-condemnation appraisal report and that Corporate Circle would realize that the appraiser would be updating his report at the time of trial. Further that Kilbride testified that his updated value would be higher. In the Post Trial Brief of Corporate Circle the offered evidence of the appraisal of Kilbride that one of the highest and best uses of the property was as a stand alone commercial development and that Kilbride had to concede that a restaurant or retail building on Parcel A would maximize its economic return. Corporate Circle asserts that the Commissioner's suggestion that the property is too small to support a stand alone commercial development is wrong.
Again from all the evidence adduced at trial and the court having viewed the premises it concludes that the highest and best use is that suggested by the Commissioner.
The Commissioner in its Post Trial Brief pursues his Second Special Defense that the allegations in the appeal do not support an award of Tenant Bonus Value or Tenant Severance Damages because Stop Shop is not aggrieved. The court agrees with the argument of Corporate Circle in that the special defenses alleged by the Commissioner only relate to partial takings of property. Corporate Circle distinguishes the argument of the Commissioner by the fact that Parcel A was taken in its entirety. The Court denies the request to enter judgment in favor of the Commissioner on the Second Special Defense. The other special defenses asserted by the Commissioner are inapplicable because the entire Parcel A was in fact taken whether it be determined on the basis of the tag along theory or as a separate commercial piece. CT Page 13006
"[T]he trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraisers, the claims of the parties in the light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish value. . . . No single method of valuation is controlling, and the referee is entitled to select the most appropriate one under the facts as he finds them." (Internal quotation marks omitted.) Feigenbaum v. New Britain HousingSite Development Agency, 164 Conn. 254, 261 (1973). "In any assessment case in which the trial court is confronted with conflicting appraisal methods, it is a proper function of the court to give credence to one expert over the other." Newbury Commons Limited Partnership v. Stanford,226 Conn. 92, 99-100 (1993). "The credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Transportation Plaza Associates v.Powers, supra, 203 Conn. 378.
"The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land. . . . The fair market value is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land, assuming, of course that a market exists for such optimal use. The `highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." (Citations omitted; internal quotation marks omitted.) Robinson v. Westport, supra,222 Conn. 405-406.
Estrada opines at page 7 of Exhibit 1 that all three approaches to value had been considered in his appraisal. Estrada concludes the common unit of comparison selected for his analysis is the sales price per square foot. Because the land in Parcel A is undeveloped his analysis is the use of the Sales Comparison Approach.
As earlier stated the credibility of expert witnesses is within the province of the trier of fact to adopt whatever testimony he reasonably believes as credible and to accord whatever weight he accords to that testimony. The court has examined the better comparisons submitted by Estrada. Kilbride even suggested his evaluation would be higher than his pre-condemnation appraisal of $156,000.
The court has considered all adjustments to the comparable sales in CT Page 13007 Exhibit I and finds that the value of the subject property of 21,755 square feet is $8.50 per square foot equaling $184,917.
Accordingly, the court enters judgment to increase the amount of compensation deposited with the court of $156,000 by the amount of $28,917 plus costs.
By the Court,
Frank S. Meadow, J.T.R.
[EDITORS' NOTE: COURT CORRECTION DATED SEPTEMBER 28, 2001 FOLLOWS]