[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
150 Sargent Drive LLC et al ("150 Sargent Drive") appeals from the assessment of damages claiming that the amount of compensation in the sum of $37,700 deposited with the court by the Commissioner of Transportation ("Commissioner") is inadequate.
On July 14, 2000 the commissioner found the premises[1] necessary for the layout alteration, extension, widening, change of grade or improvement of the state highway known as Church Street South Extension over New Haven Interlocking and Rail Yard.
An examination of the notice of condemnation may be divided into the following:
1. A taking in fee simple of 575 square feet shown on Map (Exhibit 3).
2. A permanent easement to install and maintain a 12" sanitary sewer line within an area of 14,250 square feet opposite Station 22+00 and 29+38 left of center line Present Church Street South on Map (Exhibit 3).
3. A temporary easement for closing of driveways on Church Street Extension, the installation of sanitary sewer and construction and grading of Church Street extension and associated bridge structure during the construction of certain areas totaling 28,211 square feet between stations 22+00 and 29+55 left and 31+50 and 32+75 left of Center line on Map (Exhibit 3). Temporary easement will be restored by grading and seeding area.
4. A right of entry to remove planter and curbing and construct sidewalk, establish temporary concrete sidewalk, construct paved parking area. Said right terminates upon completion of said work by the State.
5. Termination of owners right of access directly to and from Present Church Street Extension from and to said remaining land specifically across northern highway line of Present Church Street within areas located opposite Station 25+62 and 25+87 left center line of Present Church Street Extension as more particularly shown on said Map. (Exhibit 3) Owner's land shall retain access to Present Church Street Extension at all other locations.
150 Sargent Drive's Real Estate Appraiser Paul Leonard ("Leonard") states that his function is to estimate the damages from the condemnation. Leonard opines at page 18 of his appraisal report (Exhibit 4) that the damages should be assessed at a total of $459,050. He arrives at his conclusion as follows: CT Page 13824
 1. The taking of 575 square feet at $3.45= $2,000 2. Permanent easement for sewer line 435,000 3. Temporary easement 22,050
Total $459,050
The major dispute in this case as to damages is the proper valuation of the Permanent Easement (Para. 2). Leonard opines at page 18 of Exhibit 4 that the "permanent easement will cause the loss of approximately 70-75 parking spaces along the westerly side of the site. The easement will prevent parking along the entire 758 feel of the westerly frontage along Church Street Extension." Leonard argues that the parking spaces permanently lost would result in a loss of income annually of $60,900. Leonard further calculates that assuming there is a 25% operating expense the net loss per year equates to $45,675. Using a 10.5 percent capitalization rate he arrives at the loss to the owner of $435,000.
Leonard then calculates the loss for the temporary easement (Para. 3) will cause a short term loss of approximately 35 parking spaces. He then calculates that loss as follows:
 35 spaces X $70/space X 12 months= $29,400 less 25 percent operating expenses= $22,050.
Under cross examination of Leonard it was developed that if the sewer line is buried below grade of 15 feet and the area after repaving can be used after one year his calculations would be as follows:
 1. 575 square feet= $2,000 2. Permanent Easement $58,800 3. Temporary Easement $22,050
Total $82,850
Leonard testified that he based his values of parking spaces upon the leases (see Exhibit 2) that the value per parking space is $70.
The Commissioner's Real Estate Appraiser Dr. Ramesh Singhal ("Singhal") opined as follows: (See Exhibit B)
 1. 575 square feet taking= $5,530 2. 14,250 square foot underground sewer easement $20,691 3. 28,211 temporary easement $14,686 4. Temporary loss of 71 parking spaces $12,000 5. Loss of trees and landscaping $2,000
Total $41,100 (rounded) CT Page 13825
Singhal, uses the before and after methodology in his analysis. The Commissioner argues that percent easement acquisitions should be appraised by the before and after rule. For the application of such rule the Commissioner cites the authority found in Northeastern GasTransmission Co. v. Sunhom, 145 Conn. 83, 86, 139 A.2d 53 (1958). The Commissioner argues that the entire property should be valued before the easement and the remainder should be valued after the easement. The difference of both the direct damages and the severance damages equals the compensation due.
Robert Messina ("Messina"), project manager of designing sewers for this site testified that the sewer line was 12 inches as set out in the taking notice and 15 feet below surface. After the laying of the line which lies within other utility lines that the surface will be repaved. The permanent sewer line easement lies within boundary of the temporary work area easement which extends to the east of the sewer line easement. Messina testified that after the repaving the owner, 150 Sargent Drive, could use the parking spaces.
Messina testified that the two easements (permanent and temporary) encumber 71 parking spaces. He testified that the usable life of the sewer is 20 to 25 years but some lines last up to 40 to 50 years; that the worst scenario would be that the pipe would have to be replaced. Messina explained the three alternatives for repairing or replacing defective or broken or non-functioning portions of the sewer line. In most cases the sewer line can be repaired through manholes found within the parking lot and that the disruption if and when it occurs would be for a couple of weeks. In some cases "the repair may be to one or two sections which may take a month or two at most." In essence, Messina concluded there was nothing foreseeable to affect the future use of the parking spaces.
In Alemany v. Commissioner of Transportation, 215 Conn. 437, 443, 445
the court held:
 "We are also not persuaded that the absence of a limitation on the duration of the defendant's rights to use the property serves to create a fee simple interest. The plaintiff correctly states that the proper focus in determining the nature of the easement should not be the scope of the current highway improvement project, but rather the rights, both present and future, that the defendant has acquired. The fact that the notice of condemnation contains no temporal limitation on the defendant's rights does CT Page 13826 not, however, overcome the express limitation on the scope of the defendant's ability to use the property. We therefore conclude that the trial court correctly determined that the defendant condemned only an easement for highway purposes and that title to the fee simple interest remains in the plaintiff."
The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. Although the market value of the taken property is ordinarily the most appropriate measure of fair compensation; we have long held that the other measures may be appropriate when fair market value measure of damages does not fully compensate the owner. [The] question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken (citations omitted; internal quotation marks omitted.)
 "We have consistently departed from the fair market value measure of damages in cases of partial takings. When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes.'
Alemany, supra, 445.
The court rejects the valuation by Leonard whose methodology is based upon a fee simple taking of the property for the permanent easement for the sewer line.
"[A] trial court may seek aid in the testimony of experts, but must ultimately make its own independent determination of fair compensation . . . on the basis of all the circumstances bearing upon value." (Citations omitted; internal quotation marks omitted.) Robinson v. Westport,222 Conn. 402, 412 (1992).
"[T]he trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraisers, the claims of the parties in the light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish value. . . . No single method of valuation is controlling, and the referee is entitled to select the most appropriate one under the facts as he finds them." CT Page 13827 (Internal quotation marks omitted.) Feigenbaum v. New Britain HousingSite Development Agency, 164 Conn. 254, 261 (1973). "In any assessment case in which the trial court is confronted with conflicting appraisal methods, it is a proper function of the court to give credence to one expert over the other." Newbury Commons Limited Partnership v. Stamford,226 Conn. 92, 99-100 (1993). "The credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Transportation Plaza Associates v.Powers, supra, 203 Conn. 378.
In conclusion as in Alemany, supra, which this court follows the permanent easement is a partial taking and the landowner is entitled to severance damages that might result from prospective uses of the easement as well as damages immediately following from the contemplated highway improvement project for which the land was taken. (Internal quotation marks omitted.)
In this case although the sewer line lies amongst other utility lines the court finds severance damages in the event of some foreseeable repairs and or maintenance.
The argument of the Commissioner that neither appraiser found any severance damages is not controlling with the court. DeMatto, the owner's real estate manager, asserts that the lease for 150 parking spaces has been impacted upon because of the delay in the commencement of the project. The Commissioner argues to the contrary claiming the owner has failed to fence in the area or stripe the spaces.
"Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Thus there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that . . . agreed on between the condemnee and the taking authority." (Internal quotation marks omitted.) Mincucci v.Commissioner of Transportation, 211 Conn. 382, 388 (1989).
Accordingly the court concludes as follows as to damages in this case.
 575 square feet of land $2,000 Permanent easement 58,800 Temporary easement 22,050 CT Page 13828 Severance damages 10,000
Total $92,850
The amount of the deposit should be increased by the sum of $55,150 plus costs.
By the Court,
Frank S. Meadow, J.T.R.