[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF COMMITTEE CONCERNING DEFENDANT'S DAMAGES BY PLAINTIFF'S TAKING OF DEFENDANT'S PROPERTY
The undersigned Committee was appointed by the Court under16-266 of the General Statutes, was sworn in, heard the evidence offered by the parties on July 11, 1992, October 2 and 6, 1992, reviewed the briefs filed by the parties, visited the property on October 12, 1992, discussed the matter in conference, examined the law involved and filed this report of its doings.
The property is located in Shelton and is delineated on the map attached hereto and marked "Iroquois Gas Transmission System — Proposed Pipeline Crossing — Property of — Rzasa Associates — County of Fairfield, Connecticut — Issue Date 2-22-91 Drawing No. 66-025 Rev. O". The specific matter is the taking by the plaintiff of a permanent easement across the defendant's property, together with a temporary work area shown along part of the southeast line of the defendant's property, and more definitively shown in that part of map entitled "Detail `A' — N.T.S." involving "Temporary Work space — Proposed Pipeline — Permanent Easement".
This pipe line of the plaintiff was for the transmission of natural gas under pressure, from Canada, through New York and CT Page 10658 Connecticut, across Long Island Sound to a terminus in Long Island. The plaintiff laid its pipe line across the defendant's property and took a permanent easement to do so 50 feet wide within which the pipe line was laid in a covered trench. The plaintiff also took a temporary easement in a 25 foot wide space adjacent to the permanent easement for one year from the date of the entry on the land to use in the construction of the pipe line. The areas taken are 959 feet long and cover 1.10 acres for the permanent easement and 0.55 acres for the temporary easement.
The defendant's property is the 71.6 acre parcel shown on the map. It was used by the Rzasa family as a dairy farm for many years. In 1984 the family became concerned about their farm after discussions with the city concerning the proposed extension of Constitution Boulevard across their property. This extension would take a large part of the farm which already was short of land for their dairy and farming purposes. It was this concern over Constitution Boulevard that led to the meetings with the City and not the subdivision development. The defendant then bought a farm in Copake, New York and started to move its operations there. In 1992 it completed the relocation to New York.
In 1989 the family began to plan a subdivision of the Shelt farm and had many meetings with the city about the subdivision.
On March 11, 1991 the plaintiff was granted the right of entry over the defendant's property and the court has ruled that that date is the date of taking of the permanent easement and the temporary easement on the property. The plaintiff did enter and laid its pipe line in the easement so taken.
As of March 11, 1991, the taking date, the defendant did not have approval of the proposed subdivision of its farm. However, subsequently on September 24, 1991, the Planning and Zoning Commission of the city approved the defendant's application filed in April 1991 for the subdivision of its property into 47 building lots subject to certain conditions: 1) adherence to A. J. Panico's report dated 9/20/91; 2) adherence to any conditions laid down by city engineers; 3) adherence to inland wetlands; 4) effective date 10/7/91.
The plaintiff claims that it is appropriate to conclude that as of March 11, 1991, the date of the taking, the defendant's property was a large tract of farmland only.
CT Page 10659 The defendant claims the issue in the case is the status of defendant's parcel as a subdivision as of that date of March 11, 1991.
The law governing the matter is set out in the recent case of Minicucci v. Commissioner of Transportation, 211 Conn. 382 (1989). In this case, an appeal from the assessment of damages for the taking by condemnation of certain of the plaintiff's land, the court said on page 385:
 "[C]ourts have uniformly adopted the approach that raw land as such, with little or no improvements or preparation for subdivision may not be valued as if the land were in fact a subdivision. . . . The accepted rule for the evaluation of such land, therefore, is that the land will be considered in its present condition as a whole, with consideration given to any increment or enhancement in value due to the property's present adaptability to subdivision development." (Emphasis added.) 4 P. Nichols, Eminent Domain (3d Ed.) 12.3142 [1][a], pp. 12-335-356. In determining its highest and best use the trial referee must consider whether there was a reasonable probability that in the reasonably near future the subject property will be subdivided. (Emphasis added.)
As of the date of the taking the defendant's property obviously was potentially adaptable to subdivision development and six months later the defendant did receive approval of its application for the subdivision. By the rule of the Minicucci case, the committee must determine whether as of the date of the taking that there was a reasonable probability that in the reasonably near future the defendant's property will be subdivided.
William Kiernan is the husband of one of the owners of the defendant and was called as a witness and testified for the defendant. He said that there is no mortgage on the defendant's land; that there is no present plan to finance the future development; that bank financing was a probability; that without bank financing the development had to be done in sections over a five year period; that Plan No. 1 would be lots along Maple Road to get a profit for subdivisions in the rear of that area; that the defendant has not gone to any bank to get financing; that there could be financing as we go along; that members of the defendant have savings; that they have the means to get money if necessary; CT Page 10660 that if they need financing they would go to the bank; that it would take six months to get all approvals necessary; that they could start December 1 with one to five years required to sell all the lots; that the property is farm land for tax purposes; that lots along Maple Avenue could be developed first; that the defendant must provide performance bonds for the roads; that money for the bonds would come from family members; that if the project becomes a subdivision the defendant will have to pay taxes assessed as lots instead of it being farm land; that he knows of several developments which stopped; that they intend to proceed in the reasonably near future as finances allow, and that a return of the economy would help.
By the approval of the subdivision received from the Planning and Zoning Commission on September 24, 1991, the defendant had the right to subdivide its property into house lots. Now, to claim that the property is a subdivision and that the plaintiff's taking of part of it requires the plaintiff to pay compensation based or the fact that the property is a subdivision requires the defendant to show that beginning on September 24, 1991, there was a reasonable probability that in the reasonably near future after September 24, 1991, the property would be subdivided. It has not been subdivided. Nothing in fact has been done to meet the conditions contained in the Planning and Zoning Commission letter of September 24, 1991 to get approvals for City Engineer and Inland Wetlands. The defendant has leased the property to a tenant farmer and a field of corn was grown in the 1992 summer season. The record does not indicate that the City changed the tax status of the property from farming to a taxable subdivision. The defendant has the duty under the rule of Minicucci to show that "in the reasonably near future the property will be subdivided." A year has gone by since the Commission's letter and the land is still used for farming.
In the latest case of Robinson v. Westport, 222 Conn. 402
(June 1992) the court said on page 409:
 In order for a landowner to persuade the trier that his proposed method of valuation should be adopted, he must "provide the trier with sufficient evidence from which it could conclude that it is reasonably probable that the land to be taken would, but for the taking, be devoted to the proposed use by a prudent investor in the near future. . . . `The uses to be considered must be so reasonably probable as to have an effect on the present CT Page 10661 market value of the land. Purely imaginative or speculative value should not be considered."' Tandet v. Urban Redevelopment Commission, 179 Conn. 293, 299-300, 426 A.2d 280 (1979).
The defendant has not convince the committee that in the reasonably near future the property will be subdivided.
That conclusion brings the committee back to the situation where the land taken by the plaintiff is farm or raw land.
To assist the committee in determining the defendant's damages sustained by the plaintiff's taking the permanent and temporary easement each party offered a knowledgeable expert in the matter of real estate values in Shelton. Each witness put in evidence a lengthy document detailing their conclusions as to the damages sustained. Each based his opinion using the value per acre of the entire tract of the 71.6 acres which the defendant owns.
The plaintiff's appraiser, Paul Marshalka, from an analysis of claimed relevant property values of comparable sales found that the value of land similar to the defendant's property had a value per acre of $30,000.00
The defendant's appraiser, Norman Benedict, from a similar analysis of claimed relevant property values of comparable sales found that the value of land similar to the defendant's property had a value per acre of $135,000.00
The committee did not accept either value but arrived at its own conclusion from all relevant factors and found that the value of the defendant's land is $82,500.00 per acre.
The area of the plaintiff's permanent easement is 1.1 acres. 71.6 minus 1.1 is 70.5. 70.5 x $82.500 = $5,816,250.
Therefore, the value of the entire 71.6 acre tract is 71.6 x $82,500 or $5,907,000.
$5,907,000 minus $5,816,250 is $90,750.
$90,750 would be the total value if the 1.1 acres were taken from the defendant's property. However, the plaintiff took only a permanent easement. Thus, 90% of the total value of the 1.1 acre should be the value of the permanent easement or $81,675. CT Page 10662
The area of the plaintiff's temporary easement is 0.55 acres. 71.6 minus 0.55 is 71.05. 71.05 x $82,500 is $5,861,625.
$5,907,000 minus $5,861,625 = $45,375.
$45,375 would be the total value if the 0.55 acres were taken from the defendant's property. However, the plaintiff took only a temporary easement. Thus 10% of the total value of the 0.55 acres should be a reasonable amount for the one year easement. This is $4,537.
Adding $81,675 and $4,537 equals $86,212, which is the total damages the defendant sustained by the taking by the plaintiff of the permanent and the temporary easements on the defendant's property.
The defendant claimed that its property could be laid out in 47 lots and that the pipe line will be laid across four of those lots. Because of this pipe line, a septic system could not be built on each of the four lots and this would require that two of the lots would have to be combined into one lot leaving only two complete lots. However, the plaintiff put in evidence a map showing that the lots could be laid out so that a septic system could be built on each lot and the defendant will not have to lose two lots in the lay out.
The committee finds that the plaintiff's proposal takes care of the defendant's claim and that the defendant will not lose two lots and will not suffer monetary damages thereby.
The committee reports to the court that the damages sustained by the defendant by the permanent easement and the temporary easement for the plaintiff's pipe line across the defendant's property is $86,212.
Lester Aaronson Irving Levine Thomas J. O'Sullivan
[EDITORS' NOTE: EXHIBIT A MAP) IS ELECTRONICALLY NON-TRANSFERRABLE.]