[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal was returned to court in June of 1996. Plaintiffs seek additional compensation for a taking of real property in the City of Meriden by the defendant City of Meriden. Defendant filed a certificate of taking and a statement of compensation with the Clerk of the Superior Court on February 2, 1996. On February 16, 1996, the defendant filed an amended statement of compensation determining that the amount of compensation to be paid to the parties entitled thereto was $11,000.
The taking consists of a conservation easement described as follows:
 A conservation easement located easterly of and adjacent to the westerly property line of the Grantor, said property line being along the top of the mountain as described in the Meriden Land Records Volume 371, Page 212. Said easement is 150 feet wide and extends from the southerly property line northerly approximately 920 feet to the northerly property line, which property is shown on a map entitled "Property Map for Robert Dorota B. Pepin, Country Club Road, Meriden, CT, Scale: 1" = 100', April 24, 1992, by Kratzert, Jones Associates, Inc.", Map #5197 on file in the Meriden Land Records.
The easement taken is a portion of a parcel of land owned in fee simple by Robert and Dorota Pepin, plaintiffs. Timothy Pepin, also a plaintiff, is described in the amended statement of compensation (Defendant's Exh. 11) as "an applicant pursuant to a CT Page 4028 variance recorded June 3, 1992, in Volume 1852 on page 52." The property is known as 666 Westfield Road, Meriden, Connecticut. The parcel consists of 49.79 acres. It is zoned rural residential. Although most of the parcel is located in Meriden, it has a limited frontage in Middletown, Connecticut, on Country Club Road.
The parcel is rectangular in shape with a slope ascending westerly from the Country Club Road, elevation (320), to a cliff at the top of the mountain with elevations varying from (600 to 530). (Plaintiffs' Exh. D). The rear property line is defined by a cliff. The top of the cliff is approximately 180 feet above the ground below and affords a magnificent view to the west of Meriden and to portions of southcentral New Haven County (Plaintiffs' Exh. I). The taking area is in the rear of the property and includes the cliff extending along the cliff 921.30 linear feet and extending into the property to a depth of approximately 150 feet.
Along the line of the cliff there is a relatively level strip approximately 15 feet wide used by hikers as part of the Mattabassett Blue Trail. Use of the Blue Trail is by permission of the fee owners. The purpose of the take of the conservation easement is to ensure the continued use by the public of the hiking trail. The taking area amounts to 138,225 square feet or 3.17 acres.
The area near the cliff where the walking path is located is visibly ledge rock, (Plaintiffs' Exhs. J2 and J7). Aside from the visible ledge rock, the soil seems suitable for residential development although the variable topography presents development problems.
Country Club Road in Middletown originally provided no frontage to the Meriden property. Plaintiffs' Exhibit D, dated April 24, 1992, depicts a parcel of land of 8,584 square feet or 0.197 of an acre with 51.19 feet of frontage on Country Club Road extending 181.26 feet westerly to the Meriden parcel. The map notes and the hearing testimony confirms that the present owners, Robert and Dorota Pepin, intended to convey this access to Country Club Road, together with the 49.794 acres in Meriden, to their son, Timothy S. Pepin.
Timothy Pepin submitted a copy of this map to the Meriden Zoning Board of Appeals seeking a variance of the frontage CT Page 4029 requirements for this 49.74-acre parcel in order to construct a single-family home on the parcel. Zoning for the parcel is RR or rural residential. Rural residential zoning in Meriden requires 200 feet of frontage. The Zoning Board of Appeals approved the variance on May 5, 1992. (Plaintiffs' Exh. E, letter of Dominick Caruso, Director of Development and Enforcement). The Meriden parcel now has access to Country Club Road in Middletown.
On May 15, 1993, Timothy Pepin applied to the City of Meriden for a building permit for a single-family home. He also applied for a soil test on July 15, 1993. (Plaintiffs' Exh. H) The City of Meriden declined to grant either approval. Timothy Pepin testified at the hearing that his building permit application sought permission to build a single-family dwelling along the westerly boundary of the 49.74-acre parcel, in close proximity (35 feet) to the cliffside and within the area of the conservation easement which has been taken by the City. He stated that this location had the approval of the assistant city planner. The thrust of his testimony was that the City's refusal was based on its contemplation of acquiring a conservation easement in this location. The City did take this easement on February 2, 1996.
Dominick Caruso, director of development and enforcement for the City, (Plaintiffs' Exh. E) testified that the plaintiff Timothy Pepin indicated in his application for the variance that his proposed single-family home was to be located at a site 1270 feet west of the Middletown town line (Defendant's Exh. 3), approximately 1300 feet from the cliff line which is part of the take. The location depicted on Exhibit 3 would not have enjoyed a scenic view or would not have been located within the taking area.
Since Meriden zoning permits one dwelling per lot as of right in a rural residential zone, it would not appear that an owner would be restricted to any one location on the 49.794-acre parcel. Once Mr. Pepin obtained his variance and access to Country Club Road, the lot could not be characterized as a rear lot, Meriden Code 213-34-b(800, 7.2)(2).
Prior to obtaining his variance in 1992, Timothy Pepin had purchased equipment, a back hoe, bulldozer, chipper and dump truck to facilitate his plan to build a home near the cliff in order to take advantage of the view afforded by this site. He had the area mapped (Exh. D), and he cut trees and fashioned a rough, CT Page 4030 unimproved road or path from his parents' home abutting Country Club Road to the top of the mountain. He also inquired about bringing electricity and telephone to his proposed site which was 2,825 feet from the road. He talked to a welldriller about obtaining water and located a source of fill to raise the level of a driveway which he estimated would be about 3000 feet in length.
The court concludes that Timothy Pepin, the putative owner of the 49.794-acre parcel, intended to build a dwelling house within the area of the conservation easement and in all probability would have done so had he not been denied a building permit and a septic tank permit. At the hearing, Mr. Pepin offered no technical or expert evidence that the land was suitable for a septic tank nor did he submit a proposed plot plan for the location of his single-family dwelling. He did not offer any technical testimony about the feasibility or cost of a septic tank, a well or an estimate of the cost of the excavation of a site for a dwelling. Expert testimony was not offered by him pertaining to the cost of a utility trench of almost 3000 feet or the cost of constructing a driveway of similar length. Based upon Mr. Pepin's testimony, the court concludes that he intended to be his own contractor (Plaintiffs' Exh. G) and to do a considerable portion of the work himself.
Mr. Pepin did not appeal from the decision denying him a building permit.
The 49.794-acre parcel was acquired by his parents in 1957 and has remained relatively unimproved since that date. It is identified in the Meriden assessor's records as located on Map 1116, Block 269 and consists of three separate parcels: card no. 1, 20.53 acres, 666 Westfield Road; card no. 2, 19.8 acres, Old Westfield Road; and card no. 3, 10.35 acres, Rear Westfield Road (Defendant's Exh. 13). These cards estimate a base value for the entire parcel of $277,000 and estimate a true value after making adjustments for the topography for the entire parcel of $183,100.
In 1991, the Pepins appealed their assessment to the Board of Tax Review of the City of Meriden, requesting a downward adjustment. They complained that the property, the entire parcel, was bounded by a junkyard and by a quarry, that dust from Suzio, the quarry, ruined the southern part of the house. (Defendants' Exh. 14). In 1992, the Pepins again appealed their assessment (Defendants' Exh. 15) again noting that the junkyard had been CT Page 4031 given permission to enlarge, thus reducing land values (Exh. 15). In both cases, the assessment was reduced. As of the date of the take, the 49.794-acre parcel was bounded on the south by York Hill Trap Rock Company, the quarry, and on the north by Bishop's Auto Parts, Inc., the junkyard.
It would have been helpful to the court if the appraisers had followed the ordinary rule for measuring damages where a portion of a tract of land is taken, i.e., to measure the difference between the market value of the whole tract as it lay before the taking and the market value of what remained thereafter. Lefebvrev. Cox, 129 Conn. 262, 265 (1942). D'Addario v. Commissioner,172 Conn. 182, 184, 185 (1976).
Both appraisers agree that the highest and best use of the land was for residential use. Defendant's appraiser examined and submitted comparables of raw, undeveloped land, some without road frontage, items 7, 3, 1 and 8; some with road frontage, items 4, 5 and 6 (Defendant's Exh. 2). These comparables ranged from a high of $7,320 per acre (.17 cents per square foot) to a low of $2000 per acre (.05 cents per square foot). Comparable sale number one was located in Meriden, located on top of Mt. Lamentation, and was purchased by the defendant in 1994 for open spaces. The unit price per acre was $4,333. The unit price per square foot was ten cents. The appraiser opined that this sale most assimilated the subject parcel.
The subject parcel has frontage by virtue of its variance and a view which this comparable and all other comparables of defendant lack. Ultimately, defendant's appraiser placed a value per square foot on the 138,225-square foot taken of eight cents per square foot, for a total of $11,058 rounded to $11,000. Most of the parcels submitted by defendant appear to be unlikely candidates for subdivision approval or for immediate use as a site for a one-family dwelling. Defendant's appraisal and expert testimony strongly suggest to the court that the highest and best use of the subject parcel and particularly the part taken; i.e., residential, is based almost entirely on the existing zoning characterization, rural residential and not on any reasonably probable or likely residential use within the foreseeable future.
Both appraisers treated the take as the taking of a fee simple although the take is characterized as a conservation easement. They reached this decision since the owners' remainder interest in the area taken is of negligible economic value. CT Page 4032
The plaintiffs' appraiser adopted a different approach; he testified that the highest and best use of the 3.17 acres taken was for an estate type residence. He noted that although there was perhaps sufficient acreage for three homes, only one was legally permissible under the present zoning. The owner, Timothy Pepin, testified he was not contemplating a subdivision. Since no comparables were available to the plaintiff for scenic sites suitable for estate type homes, the appraiser examined and submitted to the court a large number of transactions involving the sale of developed single-family residential lots.
Preliminarily, plaintiffs' appraiser examined a total of 199 transactions on sales of single-family lots of approximately one acre in size. Subsequently, he concentrated on a sub-study of 125 transactions of such lots in the adjacent towns of Berlin, Cheshire, Cromwell, Middletown, Rocky Hill and Southington. Only two comparables in Meriden were considered. These lots which had defined boundaries were located on accepted streets with available utilities and would not confront the construction difficulties involved in building on or near a slope approximately 3000 feet from the nearest road. It does not appear from the written appraisals or the testimony of the appraiser that any of these lots were neighbors to a quarry or an automotive junkyard.
From these transactions, the appraiser established immediate unit market value of $76,087 per acre and a mean unit value of $80,133 per acre. Blending the two values, he achieved a single overall market value of $78,500 per acre. He made further adjustments for location, date of sale, size and scenic view, ascribing to the scenic view a 23 percent premium or $19,921 per acre. These adjustments produced a market indicated unit value of $100,000 per acre. Adopting these figures, the appraiser testified that the fair market value of the 3.17 acres taken was $317,000 rounded off to $320,000.
The court climbed the mountain accompanied by counsel and surveyed the magnificent view from the cliff within the take. As noted earlier, a level hiking area abuts the cliff. This area is visibly ledge and would present excavation difficulties for some distance easterly. No water is presently available on this site. A dwelling house would require a well for potable water and a septic tank. Whether the soil is suitable for a septic tank was not clearly established. No utilities are immediately available, CT Page 4033 but they could be brought up from Country Club Road, some 3000 feet distant. Bringing these utilities to the site and constructing a driveway of this distance would cause any reasonable purchaser to discount the value of the proposed dwelling lot. The presence of the quarry and the automotive junkyard forecloses the site from use as an estate. Insufficient evidence was offered from which the court could conclude that it is reasonably probable that the land to be taken would be but for the taking, be devoted to estate use by a prudent investor in the near future. Such a use cannot be considered to be reasonably probable or to have an effect on the present value of the land. The court considers such a use to be speculative and remote.Tandet v. Urban Redevelopment Commission, 179 Conn. 293, 299-300
(1979). Nevertheless, the court concludes that Timothy Pepin, in anticipation of receiving title from his parents, obtained a frontage variance for the parcel, obtained construction equipment to develop a Building site and created a rough path to this type to the top of the mountain. His efforts were not remote or speculative, and they did create value, added value to a rural undeveloped site. Robinson v. Westport, 222 Conn. 402.
The court is of the opinion based upon its inspection of the land and a review of the appraisals and all the evidence offered at the hearing, that the 3.17 acres taken have a basic building lot value of $12,000 per acre. The court would add to this value a scenic premium of 20 percent or $2400 per acre, Thus giving the acreage a unit per acre value of $14,400. Thus, the 3.7-acre parcel taken has a total value of $53,280.
Judgment may enter for the plaintiffs for the further sum of $42,280 in addition to the $11,000 already paid together with interest on said further sum at the rate of 10 percent from the date of taking to the date of payment together with costs and an allowance of $3,650 as an appraiser's fee and an allowance of $400 for the testimony of Norman Benedict, the appraiser.
Dorsey, J. Judge Trial Referee