[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is an appeal for Review of Assessment of Damages for the taking of the premises owned by the defendant (Fusco) for $79,000 pursuant to the Notice by Commissioner of Transportation (Commissioner) dated February 23, 2001. Fusco asserts that it is aggrieved because the assessment does not reflect the true and actual difference between the fair market value of the premises prior to the taking and after the taking.
The appraisers in this case both agree that the sales comparison approach before the taking and after the taking is the only applicable approach to determine the value.
Patriok Wellspeak (Wellspeak) the appraiser for Fusco introduced his prepared appraisal report. In the report he uses six land sales in his sales comparison approach for value. (See chart opposite page 37 of Exh. 1). The range of per acre is $81,000 and $91,000 per acre. Wellspeak takes $86,000 as a per acre sales comparison as the per acre value of the subject property. The subsequent property total acres before the taking was 11.19 acres. Wellspeak arrives at a figure of $960,000 before taking.
After the taking Wellspeak opines that the value is $716,400. The net difference of $243,600 is the amount of damage to the subject premises. In total the land taken is 67,392 square feet of the 487,436 ± square feet of the vacant industrially zoned land.
The highest and best use is for industrial/office use which conforms to the character of the surrounding neighborhood. Wellspeak opines that the property could accommodate a one story building of 97,490 square feet which would produce the greatest net return to the subject land (Exh. 1 p. 21). After the taking the site could accommodate a building of 84,011 square feet. Wellspeak's report asserts that because of the taking that the property would no longer be able to assemble with an adjacent parcel and thereby benefit from the premium often paid by an adjacent owner as in Sale #3 which Wellspeak relied most heavily in his opinion because of the similarity to the subject property as to time, size and location. CT Page 10723 Sale #3 sold for $90,908 per are within two months of the taking.
The commissioner offered the appraisal of Robert P. Vaughan (Vaughan) dated August 18, 2000 about one year after that of Wellspeak (Exhibit A). In his appraisal report, Vaughan assessed the damages at $79,000.
Vaughan's before and after the taking are $502,000 and $423,000 respectively leaving an assessment of damages at $79,000.
Vaughan also used the sales comparison approach for value. Vaughan's appraisal uses three comparable sales. Sale #2 shows a value of $76,102 per acre. The other comparables show $43,615 and $47,000 averaging to $45,00 or $1.03 per square foot.
In this case both appraisers agree that the highest and best use is for the development of office industrial use.
"[A] trial court may seek aid in the testimony of experts but must ultimately make its own independent determination of fair compensation . . . on the basis of all the circumstances bearing upon value." (Citation omitted, internal quotation marks omitted.) Robinson v. Westport,222 Conn. 402, 412 (1992).
"[T]he trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraisers, the claims of the parties in the light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish value. . . . No single method of valuation is controlling, and the referee is entitled to select the most appropriate one under the facts as he finds them." (Internal quotation marks omitted.) Feigenbaum v. New Britain HousingSite Development Agency, 164 Conn. 254, 261 (1973). "In any assessment case in which the trial court is confronted with conflicting appraisal methods, it is a proper function of the court to give credence to one expert over the other." Newbury Commons Limited Partnership v. Stamford,226 Conn. 92, 99-100 (1993). "The credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Transportation Plaza Associates v. Powers, supra, 203 Conn. 378.
"The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land. . . . The fair market value is the price that a willing buyer would pay a willing seller based CT Page 10724 on the highest and best possible use of the land, assuming, of course that a market exists for such optimal use. The "highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." (Citations omitted; internal quotation marks omitted.) Robinson v. Westport, supra,222 Conn. 405-406.
"Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises . . . Thus there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that . . . agreed on between the condemnee and the taking authority." (Internal quotation marks omitted.) Mincucci v.Commissioner of Transportation, 211 Conn. 382, 388 (1989).
Vaughan testified that he made no changes to the property in his update. Nothing would change his unit value and that he did not use sale #3 as did Wellspeak because of the different characteristics of Barnes Road (Sale #3). The sale of #3 was made after Vaughan's appraisal. Vaughan used sales more than two years before his appraisal and made no adjustment for time. The first three sales used by Wellsepak were similar in time. Wellspeak in developing his value considered marketing times for sales of similar properties and that a reasonable marketing time for the subject property would be twelve months.
The court has examined the adjustments on page 38 of the Wellspeak Report with the Vaughan report and makes the following determinations.
Taking of 67,392 @ 1.97 equals $132,762
The slope easement equals $8000
The drainage right of way equals $2000
The Risk for Drainage equals $10,000
$152,762
The removal of assemblage is rejected. Vaughan testified he did not think it was warranted. Wellspeak under cross-examination admitted that CT Page 10725 he had never estimated for assemblage potential before. The court had no evidence of the likelihood of assemblage. Further, the drainage discharge would not affect the entire property but only about 25% of it.
The court viewed the property and concludes from all the evidence adduced at trial that the damage to the property after the taking is $152,762. Accordingly, the court increases the assessment in the amount of $73,762 above the amount of the deposit with interest at the rate of 8% from the date of notice of the taking.
The court awards the sum of $2500 for appraiser fees to the defendant plus court costs.
 ____________________ Franks S. Meadow Judge Trial Referee