[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is an appeal by the plaintiff for the damages arising out of a condemnation award pursuant to C.G.S. § 8-129 et seq. by the City of New Haven (City) appraising the damages in the amount of $42,500. (See Exhibit 1).
The plaintiff is the owner of the subject property at 369 Columbus Avenue.
The City filed a Certificate of Taking in the land records on February 26, 1998 assessing damages at $42,500. The plaintiffs had acquired the property a/k/a 2-4 Arch Street on April 18, 1989 for the sum of $135,000. At the time of purchase by the plaintiffs the subject property was being used as a convenience grocery store on the first floor and rented out apartments on the second floor. The appraisal done by Jarvis Nichols (Nichols) was completed on May 10, 2000 because negotiations had been ongoing by the City and plaintiffs for a purchase price. Nichols who testified for the plaintiffs prepared his appraisal report entered into evidence as Exhibit 2. Donald Nitz (Nitz) the appraiser for the City filed his appraisal report Exhibit D on July 3, 1997. Nitz's report described the property on page 2 of Exhibit D as having a gross area of 5565 square feet containing a convenience store on the first floor and that the structure had been gutted and was "currently unused." Nitz further stated the roof had been resurfaced within the past year and a permit has been taken out for construction of two apartments on each of the second and third floors. Nitz further stated no interior work had been completed. "Some replacement windows have been installed on the second floor and some vinyl siding and a new entrance door to the upper floors has been installed on the exterior of the first floor." Nitz finds that the highest and best use as a retail/apartment property as improved would be its continued use as such.
The Nichols's report on pages 31 opines that the highest and best use would be for subsequent development into a multifamily residential use CT Page 11192 above the first floor retail store. Nichols opines: the highest and best use as improved:
 "The renovated apartment and convenience store has not yet reached profitless maturity. It contributes value to the underlying land. It is doubtful economic justification can be achieved by demolishing the building in favor of new construction. The Highest and Best Use of the appraised property is for continuation of its use as a 3 unit apartment over a first floor retail building."
The appraisal performed by Nitz only evaluated the first floor retail store and provided no value to the use of the second and third floor apartments. "He acknowledged that an adjustment is considered necessary to account for approvals and permits that are in place for re-habiting the subject property."
The City argues that the subject property had a fire in 1991 and that the upper floors had not been in service since at least 1991 and that no attempt to create apartment units were made. It is not clear to the court that the intended use was to only obtain a building permit for exploratory and demolition of the building. Such a conclusion at best is argument by counsel and speculative. No evidence was presented that the plaintiffs did not intend to use the upper floors and both appraisers agree the highest and best use is for a convenience store over apartments.
"[A] trial court may seek aid in the testimony of experts, but must ultimately make its own independent determination of fair compensation . . . on the basis of all the circumstances bearing upon value." (Citations omitted; internal quotation marks omitted.) Robinson v. Westport,222 Conn. 402, 412 (1992).
"[T]he trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraisers, the claims of the parties in the light of all the circumstances in evidence bearing on value and his own general knowledge of the elements going to establish value. . . . No single method of valuation is controlling, and the referee is entitled to select the most appropriate one under the facts as he finds them." (Internal quotation marks omitted.) Feigenbaum v. New Britain HousingSite Development Agency, 164 Conn. 254, 261 (1973). "In any assessment case in which the trial court is confronted with conflicting appraisal methods, it is a proper function of the court to give credence to one expert over the other." Newbury Commons Limited Partnership v. Stamford, CT Page 11193226 Conn. 92, 99-100 (1993). "The credibility of expert witnesses and the weight to be accorded to their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." Transportation Plaza Associates v.Powers, supra, 203 Conn. 378.
"The amount that constitutes just compensation is the market value of the condemned property when put to its highest and best use at the time of the taking. In determining market value, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land. . . . The fair market value is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land, assuming, of course that a market exists for such optimal use. The `highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate." (Citations omitted; internal quotation marks omitted.) Robinson v. Westport, supra,222 Conn. 405-406.
The first decision this court must make is what is the highest and best use of the property taken.
The court concludes that the highest and best use is for use as a retail store and apartments above it. It is further concluded that all permits for renovations and in keeping with the trend in the immediate neighborhood have been given to the owners. A new roof and replacement doors have been installed, and new siding was made to the building.
Nichols opined in his summary (Exhibit 2, page 3) that the damage to the property is $120,000. He arrives at the value by use of both sales comparison and income capitalization approach. The estimated value he places on the property when renovations are completed is $170,000. He arrives at the assessment of damages by estimating the cost to finish the renovations at $50,000.
In arriving at the fair market value (FMV) Nichols uses the sales comparison approach for three properties: Sale #1 at page 36, Sale #3 at page 37 and Sales #9 at page 425 Whalley Avenue. The sales comparison approach is used with renovations to the subject contemplated. Page 28 of the Nichols's report shows a summary of the costs of repair and renovations. Nichols opines that "I believe the ownership was on track to complete the renovations before the end of 1997. At the time of taking, it is reasonable to assume this would be a `first floor' convenience CT Page 11194 store with three `fresh' 3 bedroom apartments over. Tenant demand would be strong." Essentially the defendants argue that because nothing had been done to the property since the fire that the plaintiff intended to continue to use only the first floor for a grocery store. Such an argument is unavailing as the plaintiffs argue "Property must be valued at the use for which it could be put most advantageously (Transport PlazaAssociates v. Powers, 203 Conn. 369.") Both appraisers substantially agree that the highest and best use of the property would be as a retail store on the first floor and apartments above.
The City argues that Nichols failed to make adjustments to his Sale #1 at 383-385 Whalley Avenue for the superior location than the subject. This court concludes that the comparison of the locations of the comparables of Sales #1, #3 and #9 are in better locations than the subject property.
Nitz failed to give any value for the permits in his testimony. The plaintiffs argue that with permits in place and the remaining permits easily available the use of the subject premises for completion and rentals as apartments must be considered when considering a fair market value (see Fiegenbaum v. New Britain, 164 Conn. 254.) Nitz did not give an opinion for the income approach in accordance with the highest and best use.
The City further attacks the Nichols's evaluation by pointing out that he failed to add an entrepreneurial profit associated with the undertaking to renovating and operating the property. Adding the entrepreneurial profit to a discount rate of 12.5 percent the value one would expect as a reasonable return on investment you arrive at a FMV of $145,946 for the subject property.
The other area of attack on the FMV opined by the Nichols's appraisal is that he should have applied the low cost ratings rather than the average cost rating outlined by the City argument on page 13 of its Post Trial Brief.
This court accepts the testimony of Nichols in his estimate of $50,000 to finish the renovations for the highest and best use of the property.
 "Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair CT Page 11195 compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises . . . . Thus there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that . . . agreed on between the condemnee and the taking authority." (Internal quotation marks omitted.) Mincucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989).
The court concludes from all the evidence adduced at trial that the FMV for the premises is $150,000 less the sum of $50,000 for renovations as above discussed.
Damages are reassessed at $100,000. Plaintiffs in this case have received the deposit on file in the amount of $42,500.
Judgment may enter for the plaintiffs in the amount of $57,500 plus 8 percent interest from January 21, 1998 (Exhibit 1).
Appraiser fees for the plaintiffs in the amount of $3000 is approved.
Frank S. Meadow Judge Trial Referee CT Page 11196