[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a real estate tax appeal wherein the plaintiffs challenge the valuation placed on their property located at 202-204 Pequot Avenue, New London by the assessor for the City of New London (City) on the grand list of October 1, 1999.
The subject property has a width on Pequot Avenue of fifty feet and a depth of one hundred-thirty feet. The lot contains 6,500 square feet and slopes sharply down from Pequot Avenue to the Thames River. The property is improved with two separate buildings. There is a three story, four-family stone constructed apartment building adjacent to the street line containing 5,520 square feet. This apartment building is known as "Chateau Bellevue." Three of the apartment units have two bedrooms and contain 1785 square feet each. The fourth apartment is a basement one-bedroom unit containing 480 square feet of living space.
The second dwelling on the subject lot is a stand-alone single family two-story house with 1450 square feet of living space containing six rooms including two bedrooms. This house is located on the banks of the Thames river and has an enclosed porch containing 50 square feet overhanging the river.
The subject property is located in a "WD-Waterfront Development" zone. A WD zone permits yacht clubs, marinas, boat docks for pleasure boats and boats for hire, boat and engine sales, rental of boats, sail loft, museums, parking, retail stores, restaurants, offices, multi-family, motels, child daycare, and educational institutions by special permit. The immediate neighborhood to the subject property contains a mixed use of single and multi-family dwellings, small retail uses, large and small professional buildings, marinas and marine related uses. The present existing use of the subject property for residential purposes makes it a pre-existing non-conforming use.
The subject property has only one parking space, but it has an easement CT Page 853 on the adjoining property for the parking of four vehicles. The upper units of the Chateau Bellevue have balconies in back with a view of the Thames River.
The assessor for the City set the value of the subject property on the list of October 1, 1999, the revaluation year, at $405,500. Plaintiffs' appraiser, F. Jerome Silverstein (Silverstein), concluded that the subject property had a fair market value of $204,000 as of October 1, 1999. The appraiser for the City, Robert J. Flanagan (Flanagan) concluded that the subject property had a fair market value of $418,000 as of October 1, 1999.
Silverstein selected the highest and best use of the property, as of October 1, 1999, to be the present residential use of the property, whereas Flanagan was of the opinion that the highest and best use of the property was a combination of office and apartment uses. Flanagan considered that the present use of the property for residential uses was a below market use. Flanagan, as a present owner, would hold the property in its present condition until a buyer came along to take advantage of the adjacent Thames River and the fact that Pfizer, Inc., an international pharmaceutical company is about to develop a research facility in the vicinity. Flanagan was also of the opinion that the first and second floors of the Chateau building would be suitable for office uses. Flanagan's final conclusion of the highest and best use of the subject on the date of the revaluation was to use the property in a combination of office and apartment uses.
Although we might agree with Flanagan, that from an investor's approach, it makes sense to purchase the subject for future investment, given that the property is on the Thames river, in a water development zone and near the proposed Pfizer project, our charge is to determine the fair market value of the subject property as it existed on October 1, 1999, not as it might be some time in the future. The highest and best use that we select must be the use that will have an effect on the present market value, not uses that are imaginative or speculative. Robinson v. Westport. 222 Conn. 402, 409, 610 A.2d 611 (1992). The present use of the property takes advantage of the non-conforming use which pre-existed the change to Water Development zone, and provides a more intense use of the property than allowed by the zoning regulations. With the property containing a four unit apartment building and a single family house on a lot 50 feet by 130 feet, we adopt Silverstein's selection of the highest and best use to be that of the present use as a residential income producing property.
Considering the highest and best use of the subject property to be that CT Page 854 of producing rental income from its present residential use, the income approach to value is the only credible method to use in determining the fair market value of the subject property. Flanagan essentially used the sales comparison approach to value, but he based this approach on the highest and best use of the subject property being office/apartment use which is not consistent with the present use of the property. None of the four comparable sales selected by Flanagan were sales within the Water Development zone, and all were multi-family houses that were converted into office/apartment use.
Silverstein determined that the market rental income for the subject property was $700.00 for each of the two-bedroom units; $650.00 for the remaining two-bedroom unit; $450.00 for the one-bedroom unit, and $750.00 for the one family building. These rents produced an annual rent of $39,000. The market rent determined by Silverstein came from considering rentals of condominium units and apartment units nearby on Pequot Avenue and Westridge Road in New London. The rental units on the subject property are unique in that the Chateau units are much larger than Silverstein's comparables, in a building that was redone in 1985, and overlooks the Thames river. In addition, the one family free standing building on the subject property has an extremely desirable location at the edge of the Thames river, with a porch overhanging the river. Taking into consideration the size and location of the rental units on the subject property, and the market rental information provided by Silverstein, we conclude that the one family building has a monthly market rent of $975.00. The three two bed-room units in the Chateau have a monthly market rent of $900.00, and the one bed-room unit in the Chateau has a monthly market rent of $600. The total monthly rent of $4,275 produces a yearly rental income of $51,300.
Silverstein considered three years of operating expenses provided to him by the owner's accountant and added a reserve of $1,000 for replacement costs. The operating expenses provided by Silverstein include 3% for vacancy and collection costs and 3% for management costs. We consider these percentages to be reasonable, and therefore we deem the operating expenses to be credible. We also find Silverstein's determination of the capitalization rate of 10% plus the tax rate as a percentage of value of 2.3500 to be added to the capitalization rate to be credible. We therefore determine the effective gross income by deducting the vacancy and collection rate of 3% from $51,300.00 to arrive at $49,761.00. Deducting the operating expenses of $12,969[1], we arrive at a net operating income of $36,792.00. Using the capitalization rate of .1235, we arrive at a fair market value of the subject property to be $297,911.00, we round out to $300,000.00. CT Page 855
Accordingly, judgment may enter in favor of the plaintiff with the fair market value of the subject property on the list of October 1, 1999 through October 1, 2001 being set at $300,000.00. We also award a fee of $250.00 to the plaintiff as cost for the expert appraisal testimony of Silverstein. See Davis v. Westport, 61 Conn. App. 834, 853, 767 A.2d 1237
(2001).
 ___________________ Arnold W Aronson Judge Trial Referee